# Sequestration of Public Company Accounting Oversight Board Funds

The operating funds of the Public Company Accounting Oversight Board are subject to sequestration under section 251A of the Balanced Budget and Emergency Deficit Control Act of 1985, as amended, because the Board's funds have consistently been included in the President's budget, were not exempted from sequestration by Congress, and qualify as "budgetary resources" under the Act.

September 13, 2013

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD

In March and April 2013, the President ordered the cancellation of budgetary resources, known as "sequestration," after Congress failed to enact a bill achieving $1.2 trillion in deficit reduction. *See* Balanced Budget and Emergency Deficit Control Act of 1985, as amended ("BBEDCA"), 2 U.S.C. § 901a (2012). Among the entities affected by these sequestration orders was the Public Company Accounting Oversight Board ("PCAOB" or "Board"), which Congress created "to oversee the audit of public companies" after a series of high-profile auditing scandals. 15 U.S.C. § 7211(a) (2006 & Supp. V 2012); *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3147 (2010). The Board's activities are funded through annual accounting support fees it levies on the companies it regulates, with the approval of the Securities and Exchange Commission. 15 U.S.C. § 7219(d). The Board draws no funds from the United States Treasury, and by statute its receipts are not "public monies of the United States." *Id.* § 7219(c)(1). Since its inception, however, the Board has been included in the list of accounts in the President's budget, and on that basis the Office of Management and Budget ("OMB") designated the Board's budget account as subject to the cancellations required by BBEDCA section 251A, codified at 2 U.S.C. § 901a.[1]

---

[1] *See OMB Report to the Congress on the Joint Committee Sequestration for Fiscal Year 2013* at 67 (Mar. 1, 2013), http://www.whitehouse.gov/sites/default/files/omb/assets/legislative_reports/fy13ombjcsequestrationreport.pdf (last visited ca. Sept. 2013); *OMB Sequestration Preview Report to the President and Congress for Fiscal Year 2014 and OMB Report to the Congress on the Joint Committee Reductions for Fiscal Year 2014* at 34 (Apr. 10, 2013, as corrected May 20, 2013), http://www.whitehouse.gov/

The Board has asked us whether OMB was correct to deem the Board's account subject to sequestration under BBEDCA section 251A. In the Board's view, it should not have been included in the President's budget, and therefore the statutory sequestration provisions should not apply to it, because it is a private, non-governmental entity that does not use U.S. Treasury funds.[2] OMB, which submitted a memorandum containing its views,[3] points out that BBEDCA subjects every account listed in the President's budget to sequestration except for those specifically exempted, and that Congress did not exempt the Board from sequestration. In any event, OMB counters that the Board has properly been included in the President's budget based on longstanding budgetary principles.

We conclude that OMB properly designated the Board's funds as subject to sequestration under BBEDCA section 251A, because Congress was aware that the list of accounts in the President's budget included the Board; Congress chose to impose sequestration on all accounts listed in the President's budget; and Congress decided not to include the Board among the dozens of accounts exempt from sequestration. We further conclude that the Board's account contains budgetary resources subject to cancellation under BBEDCA.

## I.

Three different legal regimes are relevant background in understanding the Board's request for our opinion: (i) the provisions that prescribe sequestration, (ii) the organic statute that created the Board, and (iii) the principles governing the President's budget.

---

sites/default/files/omb/assets/legislative_reports/fy14_preview_and_joint_committee_reductions_reports_05202013.pdf (last visited ca. Sept. 2013).

[2] *See* Memorandum for Virginia Seitz, Assistant Attorney General, Office of Legal Counsel, and Benjamin Mizer, Deputy Assistant Attorney General, Office of Legal Counsel, from J. Gordon Seymour, General Counsel, Public Company Accounting Oversight Board, *Re: Whether the Public Company Accounting Oversight Board Is Subject to Sequestration Under the Balanced Budget and Emergency Deficit Control Act of 1985, as Amended by the Budget Control Act of 2011* (Mar. 25, 2013) ("PCAOB Memorandum").

[3] *See* Memorandum for Benjamin Mizer, Deputy Assistant Attorney General, Office of Legal Counsel, from Thomas S. Lue, Acting General Counsel, Office of Management and Budget, *Re: Status of Public Company Accounting Oversight Board Under the Balanced Budget and Emergency Deficit Control Act, as Amended* (May 17, 2013) ("OMB Memorandum").

## A.

In the Budget Control Act of 2011, Pub. L. No. 112-25, 125 Stat. 240, Congress made various changes to BBEDCA, the most significant of which was to create a new sequestration trigger. This trigger, which became BBEDCA section 251A, required across-the-board cancellation of budgetary resources if a special joint committee failed to propose, and Congress failed to enact, legislation that reduced the budget deficit by $1.2 trillion by a statutory deadline. *See* 2 U.S.C. § 901a. Because Congress did not enact such legislation, the President ordered sequestration of fiscal year 2013 budgetary resources on March 1, 2013. *See Sequestration Order for Fiscal Year 2013 Pursuant to Section 251A of the Balanced Budget and Emergency Deficit Control Act, as Amended*, 78 Fed. Reg. 14,633 (Mar. 1, 2013). The President further ordered sequestration of fiscal year 2014 budgetary resources on April 10, 2013, as required by BBEDCA. *See Sequestration Order for Fiscal Year 2014 Pursuant to Section 251A of the Balanced Budget and Emergency Deficit Control Act, as Amended*, 78 Fed. Reg. 22,409 (Apr. 10, 2013).

Sequestration under BBEDCA section 251A requires "the cancellation of budgetary resources provided by discretionary appropriations or direct spending law." 2 U.S.C. § 900(c)(2) (definition of "sequestration"). The statute defines various terms. "Discretionary appropriations" are "budgetary resources provided in appropriation Acts," while "direct spending" refers to budget authority provided by other laws, including entitlement authority. *Id.* § 900(c)(7)–(8).[4] "Budgetary resources" means "new budget authority, unobligated balances, direct spending authority, and obligation limitations," *id.* § 900(c)(6), and "budget authority" means "the authority provided by Federal law to incur financial obligations . . . including the authority to obligate and expend the proceeds of offsetting receipts and collections," *id.* § 622(2); *see id.* § 900(c)(1) (incorporating definition of "budget authority" in 2 U.S.C. § 622(2)). Section 251A of BBEDCA provides that sequestration reductions must be applied to each "account" that is not included in a list of exempt accounts in 2 U.S.C. § 905 or

---

[4] "Entitlement authority" refers to programs "in which the Federal Government is legally obligated to make payments or provide aid to any person who, or State or local government that, meets the legal criteria for eligibility." OMB Circular No. A-11, at 20-5 (2013). Examples include Social Security, Medicare, Medicaid, and unemployment insurance. *See id.*

subject to a special sequestration rule set forth in 2 U.S.C. § 906. *See id.* § 901a(7)–(8).[5] An "account" is an item specified in an appropriations act or, when used to refer to items not provided for in appropriations acts (i.e., when referring to direct spending), "an item for which there is a designated budget account identification code number in the President's budget." *Id.* § 900(c)(11). The statute sets forth a process for OMB to use in determining the amount of funds that must be canceled in each non-exempt account. *See id.* § 901a(2)–(4), (7)–(8).

Section 905 lists several dozen budget accounts and activities exempt from sequestration. It identifies each exempt account by name and "the designated budget account identification code number set forth in the Budget of the United States Government 2010—Appendix, and an activity within an account is designated by the name of the activity and the identification code number of the account." *Id.* § 905(j). Congress revised the list of exempt programs most recently in the Statutory Pay-As-You-Go Act of 2010, Pub. L. No. 111-139, 124 Stat. 8. The Board has never been listed as exempt from sequestration.

## B.

Congress established the Board in the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 ("Sarbanes-Oxley"), to oversee public company audits "in order to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports." 15 U.S.C. § 7211(a). Sarbanes-Oxley gave the Board significant authority to carry out that function. Public accounting firms are required to register with the Board before they may conduct an audit of a public company. *Id.* § 7212(a). The Board promulgates binding rules governing the conduct of these registered public accounting firms. *Id.* § 7213. It is also empowered to inspect these firms for compliance with its rules and professional standards, *id.* § 7214; to investigate reports of noncompliance, *id.* § 7215(b); and to initiate disciplinary proceedings and sanction companies found to have violated its rules, *id.* § 7215(c). Penalties may include fines of up to

---

[5] To the extent that a budget account contains funds that fall into more than one of these four categories, OMB must apply the category with the highest percentage reduction to that account. *See* 2 U.S.C. § 906(k)(2)–(3).

$15,000,000 and temporary or permanent revocation of registration with the Board. *Id.* The Board's sanctions determinations are, however, subject to review by the Securities and Exchange Commission ("SEC" or "Commission"). *Id.* § 7217(c). The Commission may also censure the Board or relieve it of any of its authority if the SEC concludes that doing so is in the public interest. *Id.* § 7217(d).

The Board is part of the government for constitutional purposes, and its members are officers of the United States who exercise significant government authority. *See Free Enter. Fund*, 130 S. Ct. at 3148. Some provisions of Sarbanes-Oxley, however, reflect Congress's intent to confer a measure of independence on the Board. The statute provides that the "Board shall not be an agency or establishment of the United States government," and the Board is, except as otherwise provided, afforded the treatment of a nonprofit corporation chartered in the District of Columbia. 15 U.S.C. § 7211(b). Sarbanes-Oxley further states that "[n]o member or person employed by, or agent for, the Board shall be deemed to be an officer or employee of or agent for the Federal Government by reason of such service." *Id.* Board members are appointed for five-year terms by the SEC. *Id.* § 7211(e)(5).[6] With the approval of the Commission, the Board may establish its own budget, *id.* § 7219(b), and establish and collect annual accounting support fees and registration fees that fund its activities, *id.* §§ 7212(f ), 7219(d). These fees "and other receipts of the Board . . . shall not be considered public monies of the United States." *Id.* § 7219(c)(1). Finally, the Board is not "subject to procedures in Congress to authorize or appropriate public funds." *Id.* § 7219(i).

## C.

Federal law requires the President to "submit a budget of the United States Government for the following fiscal year." 31 U.S.C. § 1105(a) (2006 & Supp. V 2012). Section 1105 contains a lengthy list of required elements of the President's budget, including "information on activities and functions of the Government," "information on costs and achievements of Government programs," and "other desirable classifications of information." *Id.* § 1105(a)(1)–(3). In practice, the determination whether

---

[6] Under the statute as enacted, Board members were removable before the expiration of their terms only for good cause, but the Supreme Court ruled the good-cause protection unconstitutional. *See Free Enter. Fund*, 130 S. Ct. at 3147.

to include an item in the budget "is made jointly" by OMB, the Congressional Budget Office ("CBO"), and the Budget Committees of Congress. OMB, *Budget of the United States Government, Fiscal Year 2014—Analytical Perspectives* 141 (2013).

OMB generally makes budgetary designations in accordance with principles outlined in the 1967 Report of the President's Commission on Budget Concepts. *See id.* at 123, 141. That report called for the budget to "be comprehensive of the full range of Federal activities. Borderline agencies and transactions should be included in the budget unless there are exceptionally persuasive reasons for exclusion." *Report of the President's Commission on Budget Concepts* 25 (1967) ("1967 Report"). The 1967 Report concludes, for example, that trust fund activities should be included in the budget even though the funds in theory "do not *belong* to the Federal Government" and despite their "partial isolation from the budget and appropriations processes," based on the Federal Government's unquestioned "responsibility for determining the size and shape" of these programs, "or for altering or redirecting these programs by appropriate changes in legislation." *Id.* at 26. Similarly, the 1967 Report concluded that the Federal Deposit Insurance Corporation should be included in the budget, despite being exempted by statute from the budgetary review process, because its structure and function are governmental in nature. *Id.* at 30. On the other hand, federal lending entities established by Congress that were privately owned and that operated in essentially the same way as private banks were considered appropriately excluded from the budget. *Id.* at 29–30.

## II.

### A.

The Board contends that subjecting its funds to sequestration is contrary to Sarbanes-Oxley and BBEDCA. In particular, it maintains that its program receipts and expenditures have been improperly included in the President's budget—and therefore categorized as subject to BBEDCA sequestration—because provisions in Sarbanes-Oxley indicate that Congress intended to exclude the Board from the President's budget. *See* PCAOB Memorandum at 8. Although we summarize and address below the Board's chief arguments, we find that most of them do not directly

bear on the point we find dispositive: that Congress clearly identified in BBEDCA and its amendments the entities that it intended to exempt from sequestration, and the Board was not one of them.

The Board's position rests principally on the language of Sarbanes-Oxley, which provides that (i) "[t]he Board shall not be an agency or establishment of the United States Government," (ii) the Board's receipts "shall not be considered public monies of the United States," and (iii) the Board shall not be "subject to procedures in Congress to authorize or appropriate funds." 15 U.S.C. §§ 7211(b), 7219(c)(1), 7219(j). The Board maintains that the President's budget, as the "budget of the United States Government," 31 U.S.C. § 1105, may only include government agencies and establishments, and that the Board, by virtue of these provisions of Sarbanes-Oxley, is not part of the government for purposes of the President's budget. PCAOB Memorandum at 8–9. This conclusion, the Board submits, is compelled by *Lebron v. National Railroad Passenger Corp.*, in which the Supreme Court, in considering whether Amtrak is a government actor for First Amendment purposes, stated (in dicta) that a statutory provision providing that Amtrak "will not be an agency or establishment of the United States Government," 45 U.S.C. § 541 (1992), "is assuredly dispositive of Amtrak's status as a Government entity for purposes of matters that are within Congress's control." 513 U.S. 374, 392 (1995). The Board maintains that whether it should be included in the budget and subject to sequestration is just such a matter "within Congress's control," and that Congress spoke directly to this question in Sarbanes-Oxley. PCAOB Memorandum at 9. The Board adds that it should not be subject to sequestration when Congress modeled it on other private self-regulatory organizations, such as the New York Stock Exchange, that are not included in the President's budget and are not subject to sequestration. *Id.* at 14–15.

According to OMB, however, the language of Sarbanes-Oxley is not conclusive of the question presented here. Whether to include an item in the President's budget, OMB explains, is "largely a policy judgment" that is guided principally by the 1967 Report's "general rule" that "[b]orderline agencies and transactions should be included in the budget unless there are extremely persuasive reasons for exclusion." *See* OMB Memorandum at 6; 1967 Report at 25. OMB argues that nothing in 31 U.S.C. § 1105 prevents the President from including in his budget the

congressionally authorized receipts and outlays of an entity whose authorizing statute provides that it is not a federal "agency or establishment" for statutory purposes. OMB Memorandum at 7. What is important here, OMB notes, is that OMB has taken the position that the Board should be included in the budget since the Board was established in 2003. *See* OMB, *Budget of the United States Government, Fiscal Year 2004—Analytical Perspectives* 463 (2003) ("Even though the statute says the Board is not an agency or establishment of the Government, its sources of funding and activities are governmental in nature."). The CBO has also consistently considered the Board to be an on-budget entity (i.e., one that is included in the budget) because it "exercis[es] the sovereign power of the federal government" and is "subject to a significant level of federal control"—conclusions reflected in Sarbanes-Oxley's pre-enactment legislative history. S. Rep. No. 107-205, at 61 (2002) ("CBO Report"). OMB further observes that the President's budget includes several other entities subject to sequestration whose organic statutes contain similar provisions stating that they are not agencies or establishments of the United States and that their funds are not government funds. *See* OMB Memorandum at 9. OMB submits, however, that the critical point is not the merits of the underlying designation, but rather that the Board has consistently been designated as on-budget and that Congress knew and understood that fact when it enacted BBEDCA section 251A. *See id.* at 1.

We begin our analysis by focusing on the text of BBEDCA. Under that statute, an agency's funds are subject to sequestration if the agency's account is included in the President's budget. *See* 2 U.S.C. § 900(c)(11). The Board recognizes, as it must, that it has long been included in the budget, but believes that its inclusion has been a mistake. In the Board's view, once this mistake is corrected, the consequence will be the exclusion of its funds from BBEDCA sequestration. We interpret BBEDCA differently. We think that the key question is whether Congress understood the Board to be within the category of accounts subject to sequestration when it amended BBEDCA. Put another way, when it amended BBEDCA in 2010 and 2011, Congress understood the Board to be part of the President's budget and declined to exempt it from sequestration. *See Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (Congress is presumed to be aware of settled administrative interpretations of legislative commands);

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) (stating that Congress "is knowledgeable about existing law pertinent to the legislation it enacts"). In these circumstances, even if the Board had mistakenly been included in the budget in the first place,[7] that would not overcome Congress's more specific intent in BBEDCA to subject the Board to sequestration. *Cf. Nitro-Lift Techs., LLC v. Howard*, 133 S. Ct. 500, 504 (2012) (invoking the "ancient interpretive principle that the specific governs the general").

By its terms, sequestration under BBEDCA section 251A applies to each "account" that is not listed as exempt in section 905 of title 2. *See* 2 U.S.C. § 901a(7). BBEDCA defines an "account" as: (i) "an item for which appropriations are made in any appropriation Act and, [(ii)] for items not provided for in appropriation Acts, . . . an item for which there is a designated budget account identification code number in the President's budget." *Id.* § 900(c)(11). The universe of "accounts" subject to sequestration therefore includes, among other things, all items with an account identification code number in "the President's budget" (unless exempted by section 905). Congress's reference to "the President's budget" plainly means the budget that OMB prepares and the President submits to Congress according to the requirements of 31 U.S.C. § 1105. To the extent that OMB had settled on and abided by a consistent understanding of the requirements of section 1105—including which entities should and should not be included in the budget—we presume that Congress intended to adopt this understanding when it substantially revised BBEDCA in 2010 and 2011. *See Bragdon*, 524 U.S. at 645. In other words, we presume that, when Congress referred to the list of entities in the President's budget, Congress knew what was on that list. *See id.*; *Goodyear Atomic Corp.*, 486 U.S. at 184–85.

That list has, at all relevant times, included the Board. Before the enactment of Sarbanes-Oxley, the CBO concluded that the Board should be included in the budget, and the bill's pre-enactment Senate Report reflected the CBO's conclusion. *See* CBO Report at 61 (2002) (quoted *supra* p. 70). OMB agreed with the CBO's judgment and included the Board in the President's budget beginning in the year the Board was established; OMB also included in an accompanying report a full para-

---

[7] We express no view on this question, but note that the President does appear to have significant discretion about what is included in the budget. *See supra* Part I.C.

graph explaining the reasons for this decision. *See* OMB, *Budget of the United States Government, Fiscal Year 2004—Appendix* 1104 (2003); OMB, *Budget of the United States Government, Fiscal Year 2004—Analytical Perspectives* 463 (2003). OMB has designated the Board as on-budget in every year since then.[8] Thus, we presume that, when Congress directed OMB to use the list of entities covered in the President's budget in implementing sequestration under section 251A, it was aware of OMB's settled practice and understood that the Board would be among the affected entities.

This conclusion finds strong support in the structure of BBEDCA. Congress specifically exempted dozens of accounts and activities from sequestration in the statute. If Congress had intended to exempt the Board from sequestration, it could simply have added the Board's account to its lengthy list of accounts and activities exempt from sequestration under section 905, either in 2010 when it fully revised the list of exempt accounts and activities, or in 2011 when it enacted section 251A. Significantly, there can be no doubt that Congress referred to the President's budget in the course of drawing up these lists: each exempt account in section 905 "is identified by the designated budget account identification code number set forth in the Budget of the United States Government 2010—Appendix." 2 U.S.C. § 905(j). The 2010 budget appendix—like every budget appendix going back to the Board's creation in 2003—included the Board. And Congress had yet another opportunity to exempt the Board from sequestration. In August 2012, Congress enacted the Sequestration Transparency Act, Pub. L. No. 112-155, 126 Stat. 1210 (2012), which required OMB to submit a comprehensive report the following month explaining which accounts would be subject to sequestration reductions. Congress required OMB to submit the report in advance

---

[8] *See* OMB, *Budget of the United States Government, Fiscal Year 2005—Appendix* 1184 (2004); OMB, *Budget of the United States Government, Fiscal Year 2006—Appendix* 1223 (2005); OMB, *Budget of the United States Government, Fiscal Year 2007—Appendix* 1207 (2006); OMB, *Budget of the United States Government, Fiscal Year 2008—Appendix* 1126 (2007); OMB, *Budget of the United States Government, Fiscal Year 2009—Appendix* 1229 (2008); OMB, *Budget of the United States Government, Fiscal Year 2010—Appendix* 1288 (2009); OMB, *Budget of the United States Government, Fiscal Year 2011—Appendix* 1329 (2010); OMB, *Budget of the United States Government, Fiscal Year 2012—Appendix* 1299 (2011); OMB, *Budget of the United States Government, Fiscal Year 2013—Appendix* 1405 (2012); OMB, *Budget of the United States Government, Fiscal Year 2014—Appendix* 1317 (2013).

of implementing sequestration reductions in order to "obtain information about how this sequester will be applied and its effect on both nondefense and defense programs," with the ultimate aim of "provid[ing] both the President and the Congress [with] improved tools to reconsider spending." H. Rep. No. 112-577, at 5, 10 (2012). The Sequestration Transparency Act gave Congress the opportunity to preview OMB's determination of which accounts and activities were subject to sequestration, and allowed Congress time to revise BBEDCA before sequestration reductions took effect if it disagreed with any of OMB's determinations concerning the statute's application. OMB's report, submitted in September 2012, included the Board. *See OMB Report Pursuant to the Sequestration Transparency Act of 2012* at 218 (2012) (describing Board's budget account as containing budget authority subject to sequestration). Had Congress wanted to exempt the Board from sequestration following receipt of this notice from OMB, it could have added the Board to the section 905 list when it amended BBEDCA in January 2013. It did not do so. *Cf. Whether Reservists Must Exhaust Available Leave 5 U.S.C. § 6323(b) Before Taking Leave Under 5 U.S.C. § 6323(a)*, 36 Op. O.L.C. 129, 149–50 (2012) (stating that Congress may be understood to have ratified an administrative interpretation when there is evidence to suggest that Congress was aware of that interpretation, citing *Brown v. Gardner*, 513 U.S. 115, 121 (1994)).[9]

Given the strong textual indicia of congressional intent to subject the Board to sequestration, we cannot accept the Board's contrary arguments. As noted above, the Board emphasizes *Lebron*'s statement that statutory language resembling the referenced provisions of Sarbanes-Oxley is

---

[9] The Board objects that this reasoning "overlooks that an entity requires an exemption only if it is properly subject to sequestration in the first place." Memorandum for Virginia Seitz, Assistant Attorney General, Office of Legal Counsel, and Benjamin Mizer, Deputy Assistant Attorney General, Office of Legal Counsel, from J. Gordon Seymour, General Counsel, Public Company Accounting Oversight Board, *Re: Whether the Public Company Accounting Oversight Board Is Subject to Sequestration under the Balanced Budget and Emergency Deficit Control Act of 1985, as Amended by the Budget Control Act of 2011* at 9 (June 10, 2013) ("PCAOB Reply"). We agree that, if Congress had not included the Board in the entities subject to sequestration as an initial matter, it would have had no reason to list the Board as exempt in section 905. But as explained above, we believe Congress subjected the Board to sequestration when it defined the covered accounts to include those OMB had listed in the budget. In this context, Congress's failure to list the Board as exempt evinces its intent to subject it to sequestration.

"assuredly dispositive of [the Board's] status as a Government entity for purposes of matters that are within Congress's control." *Lebron*, 513 U.S. at 392. But the Court further explained in *Lebron* that such statutory language bears on the applicability of laws that expressly depend on the entity's status as part of the federal government or as a government agency, such as the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2012), the Federal Advisory Committee Act, 5 U.S.C. app. § 1 *et seq.*, and the laws governing federal government procurement, 41 U.S.C. § 5 *et seq.* (2006 & Supp. V 2012). *See Lebron*, 513 U.S. at 392. As set out above, BBEDCA's applicability does not depend on an entity's governmental status for the purposes addressed in this passage of *Lebron*.[10] And in other instances in which Congress has sought to make clear that funds are exempt from BBEDCA sequestration, it has said so clearly and with express reference to BBEDCA. *See* 39 U.S.C. § 2009a(3) (2006 & Supp. V 2012) (providing that Postal Service Fund receipts and disbursements "shall be exempt from any order issued under part C of the Balanced Budget and Emergency Deficit Control Act"); Pub. L. No. 101-508, § 13301(a), 104 Stat. 1388, 1388-623 (1990) (stating that Social Security trust funds "shall not be counted as new budget authority, outlays, receipts, or deficit or surplus for purposes of . . . the Balanced Budget and Emergency Deficit Control Act of 1985").

Finally, we note that the Board is not the only federal entity subject to sequestration despite a congressional statement that it is not an "agency or establishment of the United States," or that its funds are not "Government funds or appropriated monies." *Cf.* PCAOB Memorandum at 14–17. As OMB notes, OMB Memorandum at 9, other entities are in the same position. *See, e.g.*, 15 U.S.C. § 78ccc(a)(1)(A) (Securities Investor Protection

---

[10] For the same reason, the analysis contained in a 2007 opinion from our Office does not apply here. *See Status of the Public Company Accounting Oversight Board Under 18 U.S.C. § 207(c)*, 31 Op. O.L.C. 47 (2007) ("2007 Opinion"). In the 2007 Opinion, we concluded that a former SEC employee representing the Board before the SEC was not acting "on behalf of . . . the United States" for purposes of 18 U.S.C. § 207(c). Applying *Lebron*, we reasoned that the statutory provision stating that the Board is not "an agency or establishment of the United States Government" was dispositive of the Board's status as an agency or instrumentality of the United States Government for purposes of the conflict of interest laws. *Id.* at 51. As was the case in *Lebron* (and not the case here) the applicability of those laws, specifically 18 U.S.C. § 207(c), depended on the entity's status as part of the United States Government.

Corporation); 22 U.S.C. § 2131(b)(1) (2006 & Supp. V 2012) (Corporation for Travel Promotion); 12 U.S.C. § 16 (2012) (Office of the Comptroller of the Currency); *id.* § 5497(c)(2) (Consumer Financial Protection Bureau); 15 U.S.C. § 78d(i)(4) (SEC Reserve Fund). The fact that similarly situated entities are included in the budget and not exempted from sequestration by section 905 of BBEDCA supports OMB's conclusion that Congress intended to subject the Board's funds to sequestration.

## B.

The text of BBEDCA refers to the President's budget to determine whether an entity's funds are subject to sequestration. As a result, the Board, which has consistently been included in the President's budget, is subject to sequestration. The analysis does not end there, however, because section 251A sequestration applies only to "budgetary resources," 2 U.S.C. §§ 900(c)(2), 901a(7)(A), which means "new budget authority, unobligated balances, direct spending authority, and obligation limitations," *id.* § 900(c)(6). The Board asserts that even if its operating funds are held in an "account" within the meaning of BBEDCA, that account does not contain "budgetary resources" subject to sequestration.

Because none of the other categories of "budgetary resources" applies here, the resolution of this argument turns on whether the Board possesses "budget authority." The Board argues that it lacks budget authority. It relies on a Government Accountability Office ("GAO") publication defining budgetary authority as the "[a]uthority provided by federal law to enter into financial obligations that will result in immediate or future outlays involving federal government funds." GAO, *A Glossary of Terms Used in the Federal Budget Process* 20 (2005); *see* PCAOB Memorandum at 11–12; PCAOB Reply at 2–3. The Board argues that, under Sarbanes-Oxley, it does not have the authority to incur obligations that will result in outlays on behalf of the federal government, and therefore does not have "budget authority" under that definition of the term.

But BBEDCA contains its own, broader definition of "budget authority": "the authority provided by Federal law to incur financial obligations," consisting of, among other things, "provisions of law that make funds available for obligation and expenditure (other than borrowing authority), including the authority to obligate and expend the proceeds of offsetting receipts and collections." 2 U.S.C. § 622(2)(A); *see id.* § 900(c)(1) (incorporating definition of "budget authority" in section 622). The defini-

tion also includes "offsetting receipts and collections as negative budget authority, and the reduction thereof as positive budget authority." *Id.* § 622(2)(A)(iv). BBEDCA therefore defines "budget authority" as funds made available pursuant to authority provided by federal law, irrespective of whether the funds are labeled "federal government funds" or otherwise. The Board's funds plainly satisfy BBEDCA's definition of "budget authority." They are funds collected (as SEC-approved mandatory registration and accounting support fees) and obligated (consistent with an SEC-approved annual budget) for expenditure consistent with the congressional authorization provided in Sarbanes-Oxley. In other words, the Board's activities are funded under "provisions of law that make funds available for obligation and expenditure." *Id.* § 622(2)(A). They are therefore budgetary resources subject to sequestration under BBEDCA.[11]

The Board also argues that subjecting it to sequestration would "lead to incongruous results" because the Board may continue to collect receipts at its normal pace but may not obligate those funds or send them to the Treasury Department. *See* PCAOB Memorandum at 12 n.10. Funds may therefore be escrowed and not made available for obligation by the Board until BBEDCA section 251A sequestration is no longer in effect; in the meantime, sequestration reductions imposed on the Board "will not decrease the federal deficit by a single dollar." *Id.* at 2. The Board's argument appears to be that requiring cancellation of the authority to obligate collected offsetting receipts—and putting collected funds in escrow until the end of sequestration—would not result in deficit reduction, and thus would be inconsistent with (or at least would not advance) BBEDCA's legislative purpose. But Congress considered the possibility that this scenario might occur and expressly provided for it: "Budgetary resources sequestered in revolving, trust, and special fund accounts and offsetting collections sequestered in appropriation accounts shall not be available for obligation during the fiscal year in which the sequestration occurs, but shall be available in subsequent years to the extent otherwise provided in law." 2 U.S.C. § 906(k)(6). An argument based on BBEDCA's general

---

[11] Congress's declaration of purpose in the Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-344, 88 Stat. 297 (codified at 2 U.S.C. § 621), does not provide significant guidance in determining BBEDCA's reach. *See* PCAOB Reply at 2. In BBEDCA, Congress adopted the prior act's definition of "budget authority," but it did not expressly or implicitly adopt the earlier statute's declaration of purpose. In any event, section 621's declaration of purpose is broad and general, and provides little assistance in interpreting the phrase "budget authority" in section 622.

purpose cannot be used to countermand section 251A, particularly where Congress has expressly recognized that some applications of the statute might not directly serve that purpose. *See Kloeckner v. Solis*, 133 S. Ct. 596, 607 n.4 (2012). [12]

## III.

For these reasons, we conclude that the Board is subject to the sequestration provisions of BBEDCA section 251A.

BENJAMIN C. MIZER
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[12] The Board also suggests that if OMB includes it in the list of programs, projects, and activities subject to sequestration, then it must also include "purely private" entities ranging from "Apple to the local apple cart, as well as state and local activities with no federal involvement." PCAOB Memorandum at 12 n.11; *see also* PCAOB Reply at 3. Our reading of BBEDCA, however, does not lead to the absurdity that the Board posits. In our judgment, the Board's funds are subject to sequestration under BBEDCA section 251A because (i) that section specifies that sequestration applies to entities that are on-budget, (ii) the Board has consistently been such an entity since its inception, (iii) Congress did not exempt the Board from sequestration, and (iv) the Board collects and obligates funds pursuant to authority provided by federal law. Plainly, the entities the Board likens to itself do not meet these criteria. In any event, we do not address the circumstances of entities not presented here.